## Rader, Appellant, *v.* Kriebel.

*Road  law—State  highway  department—Townships—Contract—Acts of April* 15, 1903, *P. L.* 188 *and May* 1, 1905, *P. L.* 318.

The Act of May 1, 1905, P. L. 318, does not operate retrospectively so as to affect the obligation of a township in its contract with the state highway department, under the provisions of the Act of April 15, 1903, P. L. 188, to pay one-sixth of the cost of the improvement of a public road in the township, where such contract as well as the contract under which the work was done, were entered into, and the work was begun, before the passage of the act of 1905, although the work under the contract was not fully completed until a few months afterward.

Argued Dec. 5, 1906.    Appeal, No. 128, Oct. T., 1906, by plaintiff, from decree of C. P. Montgomery Co., Dec. T., 1905, No. 2, dismissing bill in equity in case of A. M. Rader v. E. G. Kriebel and John K. Metz, Supervisors of Worcester Township.    Before RICE, P. J., PORTER, HENDERSON, MORRISON, HEAD and BEAVER, JJ.    Affirmed.

Bill in equity for an injunction.

SWARTZ, P. J., filed the following opinion :

The township of Worcester made a contract with the state highway commissioner, under the Act of April 15, 1903, P. L. 188, for the improvement of a public road. Before the road was fully completed the Act of May 1, 1905, P. L. 318, was passed. The bill raises the question whether the township must pay one-sixth of the cost of construction as provided by the act of 1903, or whether the state is entitled to only one-eighth of the cost of said construction as provided by the act of 1905.

### FINDINGS OF FACT.

1. Worcester township is a township of the second class, and E. G. Kriebel and John K. Metz were the supervisors in the year 1904.

2. On September 8, 1904, the supervisors of said township and the county commissioners of Montgomery county entered into a contract with the state highway commissioner for the improvement of about two miles of a certain highway in said township of Worcester.

The agreement was under seal and sets forth that the improvement was recommended by the highway commissioner under the provisions of the act of April 15, 1903. Under this contract the county of Montgomery agreed to pay one-sixth of the total expenses of the improvement and the township of Worcester was to pay one-sixth of said expenses.

3. The state highway commissioner entered into a contract with C. N. Smith & Co. for the construction of the highway. This contract was made in the month of September, 1904. Smith & Co. abandoned the work and on December 12, 1904, the work was relet to the township of Worcester.

4. The work of construction began prior to December 12, 1904, under Smith & Co., and was completed by the township in August, 1905.

5. No payments of any kind for the construction were made prior to June 20, 1905; all payments made to the contractor were made under warrants drawn by the highway commissioner on the state treasurer as provided by the act of May 1, 1905.

6. The amount appropriated under the act of 1903, by the legislature was $6,500,000. The unexpended balance under said act was $6,356,232.47. The amount appropriated under the act of 1905 was $6,356,232.47.

7. The bill alleges that the supervisors of the township are about to pay to the state treasurer the one-sixth part of the entire expenditures for the highway improvement. This allegation is not denied. The defendants do not question the jurisdiction of the court to entertain the cause of complaint.

8. If the township supervisors must pay according to their contract under the act of 1903, the amount due from them is $2,375.10. If they pay the proportion fixed by the act of 1905, then the amount due from them is but $1,781.32.

### CONCLUSIONS OF LAW.

1. Equity takes jurisdiction where a taxpayer by bill seeks to restrain the illegal disposition of municipal funds which the taxpayer in common with others will be required to pay.

2. The defendants are required to pay the proportionate cost of the improvement according to the terms of their contract under the act of April 15, 1903. There is nothing in the act of May 1, 1905, to relieve them from such payment.

3. The act of 1905 embraces only cases where the improvements are made under the provisions of that act. Payments of expenditures for road improvements are to be made to the state treasurer by the township to the extent of one-eighth of the whole cost when the improvements were made under the provisions of the act of 1905. There is no direction in the act of 1905, that its provisions shall be retrospective. Retroactive laws being in their nature odious it ought never to be presumed that the legislature intended to pass them where the words will admit of any other meaning.

4. As the defendants propose to do that which the law requires of them, it follows that the bill must be dismissed at the cost of the plaintiff.

### DISCUSSION.

The parties occupy rather a peculiar position in this case. The supervisors advocate a demand which ordinarily we should expect the commonwealth to assume. We may admit, how-

ever, that the supervisors would not undertake to pay the larger sums unless the state demanded it.

It is not very clear that the supervisors do admit that they intend to pay the sixteen and two-thirds per centum of the highway improvement. The failure to make a direct denial of the allegation in the eighth paragraph of the plaintiff's bill may be regarded as such admission. If the supervisors are satisfied that they owe the larger sum, then there is no good reason why they should attempt to withhold the money from the state treasury. It cannot be questioned that a citizen and taxpayer may proceed in equity to test the validity of the proposed appropriation by the supervisors, where the money to be paid must be raised by taxation or expended from the municipal treasury: Frame v. Felix et al., 167 Pa. 47.

Does the act of 1905 apply to the contract made between the commonwealth and the township supervisors on September 8, 1904? The act of May 1, 1905, both in its title and various sections, declares how highway improvements shall be paid, but it is careful to state that the payment is for costs of highway improvements " made under the provisions of this act."

The improvements made in Worcester township were not made under the act of 1905. The contract was made under the provisions of the act of April 15, 1903, and the work was done under the latter act. Even the contract for the actual doing of the work was executed in September, 1904, and the subletting to the township of Worcester was entered into as early as December 12, 1904. The work of improving the highway was commenced fully seven months before the act of 1905 was passed.

Under the written contract of September 8, 1904, the commonwealth " agreed to carry out the recommendation of the State Highway Commissioner and to defray two-thirds of the total expense of such improvement." The county and the township of Worcester " jointly and severally agree to pay each one-sixth of the total expense of such improvement."

There is nothing in the act of 1905 that we discovered that relieves the township from paying according to the terms of its contract. There is no declaration ·in the act of 1905 that its provisions are to have a retroactive construction or effect.

"Statutes are prima facia prospective in their operation and retrospective laws being in their nature odious, it ought never to be presumed the legislature intended to pass them where the words will admit of any other meaning : " Underwood v. Lilly, 10 S. & R. 97.

Statutes must be construed to be prospective unless the legislature has expressed in clear and unambiguous terms an intent that they shall act retrospectively or such intent is necessarily implied from the language of the statutes : Thomas's Election, 198 Pa. 546 ; Sproul v. Standard Plate Glass Co., 201 Pa. 103.

It is true that the commonwealth has the undoubted power to pass a retroactive law impairing her own right: Davis v. Dawes, 4 W. & S. 401, but the act must show such intent or purpose before we can give to it the retroactive interpretation.

That the act of 1903 was repealed by the act of 1905 is quite evident. The later act was intended as a substitute for the earlier statute upon the same subject. It does not follow, however, that the repeal of the act of 1903 destroys the contract made with the supervisors prior to the time of the enactment of the repealing statute. The contract was so far executed that the township received its consideration for the money it had promised to pay. The improvement was fully completed in accordance with the provisions of the act of 1903, although some work may have been done after the act of 1905 was passed.

All contract obligations are protected from impairment by the constitution. This constitutional provision extends to contracts made by a state with individuals. When the state becomes a party to a contract, the same rules of law are applicable to her as to private persons under like circumstances : Davis v. Gray, 84 U. S. 203. She can claim her rights under a contract until she relinquishes them. She did not say that for improvements heretofore made she would pay seventy-five per centum of the cost. What she did say by the act of 1905 was, that for improvements made in pursuance of the new act she would pay three-fourths of the costs.

True, the act of 1903 is repealed, but the state does not require the aid of that act to enforce her claims of sixteen and

two-thirds per centum. She has her contract, and upon this she can sue just as any individual may claim his rights on a subsisting contract.

The act of 1905, does not save or provide for existing contracts. If it did, we might hold that there was no impairment of the old contracts, because if they are covered by the act of 1905, the remedy of the township is as adequate and efficacious as it is under the act of 1903. Any inadequacy on behalf of the state would be waived by her through the enactment of the new law. The act of 1905, does not pretend to provide for existing contracts under the act of 1903. It follows that if the contract with the supervisors is defeated by the act of 1905, then that contract is necessarily impaired.

If the contract of September 8, 1904, between the state and the supervisors is not binding upon the parties then there is no obligation on the part of either to pay anything. The agreement of the state to pay two-thirds of the cost of the improvement is an obligation to pay money and, therefore, a contract of the highest nature which the legislature may not impair.

It is argued that the legislature intended to discharge all existing contracts under the provisions of the act of 1905, because all the money appropriated under the act of 1903, was reappropriated under the act of 1905. In other words, that there is no money to meet the obligation of September 8, 1904, unless it is furnished out of the appropriation made by the act of 1905. If we concede the premises, the conclusion may follow. Under the act of 1903, a certain sum was appropriated or apportioned to the county of Montgomery for highway improvements. So much of this fund as was required to meet the obligation of the state in the Worcester improvement " was applied for " by the county. The cost of the improvement was expended or specially appropriated by the highway department. The act of 1905 does not pretend to appropriate any money already expended under the act of 1903. In fact there is nothing in the act declaring that any of the money appropriated by the act of 1903, shall be used to meet the requirement of the act of 1905. There is an appropriation of a specific sum under the act of 1905, but its source is not designated. We cannot assume that the legislature intended to take from the highway department the money specifically set

554    RADER, Appellant, v. KRIEBEL.

Opinion of Court below—Opinion of the Court. [32 Pa. Superior Ct.

apart to meet the existing obligations of the state. Of course, as already stated, so much of the appropriation of 1903, as was not needed to meet existing contracts fell back into the state treasury to meet any call of the legislature. The old act was repealed and no new expenditures could be made out of the appropriation of 1903. It is a simple business proposition to ask the highway department to discharge its obligations incurred under the act of 1903, out of the funds set apart for that purpose and then pass the balance of the appropriation to the state treasury. Any other method of dealing would work out inequality. The Worcester contract was not promptly executed because of the default by the original contractors; by the delay, if we adopt the plaintiff's theory, the township makes a profit.

Another township under a later contract, but by prompt action, finished the work before May 1, 1905, and had to pay the larger percentage of the cost of the improvement. This would be a reversal of the rule that the reward is to the diligent rather than the slothful. There was no difficulty in fixing the amount to be retained to meet the Worcester contract. The agreement with the contractor must have fixed the sum to be paid for the road improvement.

And now, April 20, 1906, the bill is dismissed at the cost of the plaintiff; the prothonotary will enter a decree nisi accordingly and if no exceptions are filed as required by the equity rules, he will enter a final decree as of course.

*Error assigned* was decree dismissing the bill.

*Edwin S. Nyce*, for appellant.

*Montgomery Evans*, with him *John M. Dettra*, for appellees.

PER CURIAM, February 25, 1907:

We concur with the learned president judge below in the conclusion, and in his satisfactory opinion in support of it, that it was not the intention of the legislature to have the Act of May 1, 1905, P. L. 318 operate retrospectively so as to affect the obligation of a township in its contract with the state highway department, under the provisions of the Act of

April 15, 1903, P. L. 188, to pay one-sixth of the cost of the improvement ·of a public road in the township, where such contract as well as the contract under which the work was done were entered into, and the work was begun, before the passage of the act of 1905, although the work under the contract was not fully completed until a few months afterward.

The decree is affirmed, the costs of this appeal to be paid by A. M. Rader, the appellant.