Ricketts, Appellant, v. Allegheny County.

Argued October 5, 1962. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and KEIM, JJ.

*Alexander Cooper* and *Melvin Schwartz,* with them
*Cooper, Goodman & Schwartz,* for appellants.

*Norman J. Cowie* and *Maurice Louik,* County Solici-
tor, with them *Thomas M. Rutter, Jr., Harold Gondel-
man,* Assistant County Solicitors, and *Pringle, Bredin
& Martin,* for County of Allegheny, appellee.

*Marcus Aaron, II,* Assistant City Solicitor, with
him *David W. Craig,* City Solicitor, for City of Pitts-
burgh, appellee.

OPINION BY MR. JUSTICE KEIM, November 28, 1962:
This is an appeal from order of court sustaining
preliminary objections filed by defendants in an action
of trespass to recover for personal injuries sustained
by the minor plaintiff.

Regis Ricketts, the minor plaintiff, age 12, lived
with his parents at 314 38th Street in the City of
Pittsburgh, Allegheny County, Pennsylvania. On Feb-

ruary 4, 1960 while playing in a vacant house at 339 37th Street on the second floor went out on the porch roof and fell two stories to the ground and sustained serious injuries as listed in the complaint. The house was owned by the heirs of Teresa Brunner and occupied by tenants until vacated pursuant to an order of the Allegheny County Health Department dated October 8, 1959.

In the county health department order to vacate, the following unlawful conditions were listed: Dilapidated condition; no bath; no hot water; remove outside toilet; in need of major repairs to roof, walls, foundations, floors, plumbing, heating and wiring. Make windows and doors weathertight. Remove refuse and debris from premises.

The premises were in a heavily populated section of the City of Pittsburgh and across from a public playground. Plaintiffs allege that shortly after the tenants vacated the premises in accordance with the order of the Allegheny County Health Department children from the neighborhood came on the premises to play, broke windows, doors and did damage to the floors so as to make them unsafe, and in general created a nuisance which was dangerous and hazardous to children as well as to all people in the neighborhood.

The negligence allegedly consists of: "1. Knowledge of the 'dangerous and hazardous condition' and subsequent failure 'to erect proper safeguards such as barricades . . .' 2. Failure to give warning to the minor plaintiff and such as him knowing that the failure to do so would endanger life and limb since there was existing an attractive nuisance. 3. Failure to take proper measures to prevent children and others from coming on the property when the defendants knew of the danger and were bound to anticipate that children would come on the premises. 4. Failure to take affirmative action against the owners to have them cor-

rect the conditions. 5. 'They failed to take active steps to abate the dangerous and hazardous nuisance.' "

Suit was entered against the County of Allegheny and the City of Pittsburgh charging that the county health department acting in behalf of the county, and as agent for the city, was responsible for the maintenance of conditions alleged and as such, both municipalities were claimed to be answerable in tort to the plaintiffs.

Both defendants filed preliminary objections on the grounds that there was no cause of action stated against either defendant.

The City of Pittsburgh argues it has no agency relationship with the Allegheny County Health Department under the Local Health Administration Law and is in no way responsible for any action by the county officials, and with this contention we agree. Prior to 1956 the City of Pittsburgh maintained its own department of health and exercised certain powers through that department for the protection of the public health in accordance with the various statutes of the Commonwealth of Pennsylvania.

The Local Health Administration Law of August 24, 1951, P. L. 1304, 16 P.S. §12001 et seq. (Hereafter the Local Health Act) empowered counties to establish county departments of health. The Act provided a procedure by which municipalities were empowered, by passing a proper ordinance, to become subject to the jurisdiction of the county health department at the time of its establishment or at any time thereafter.

The County of Allegheny established its department of health on March 13, 1956, its operation to commence by January 1, 1957. The City of Pittsburgh by Ordinance No. 472, approved November 29, 1956, provided in part: "Section 1. It is hereby declared to be the intention of the City of Pittsburgh that upon the establishment of the Allegheny Department of Health the

City will cease to exercise any of the public health functions vested in it by law and will become subject to the County Department of Health . . ."

This action by the City of Pittsburgh by ordinance pursuant to legislative authority (§15 of the Local Health Act, 16 P.S. §12015) did not delegate its functions but yielded them to the county and became subject to the direction and control of the county in all matters of public health, and was thereafter forbidden by legislation from exercising any of the public health functions. From this time on the city had no more control over actions of the county health department than it has over the county commissioners or other elected county officials.

The appellants argue that a municipality is liable in tort for permitting a nuisance to be maintained in its jurisdiction and under its direct control, and further contend that legal title is not necessary to hold a municipality liable for permitting the nuisance, merely the right to possession and direct control over the property. The appellants rely on *Cooper v. Reading,* 392 Pa. 452, 140 A. 2d 792 (1958) ; *Pintek v. Allegheny County,* 186 Pa. Superior Ct. 366, 142 A. 2d 296 (1958). In reviewing the *Reading* case we find an entirely unrelated situation because in that case the city, pursuant to an easement, discharged its storm drainage water into the bed of a former canal which formed a pool where two boys drowned. In this case the city had control of the land. In the *Pintek* case the County of Allegheny bought the property involved with two other taxing bodies at a tax sale and rented the property out to tenants.

In the present case neither of the defendants acquired title, possession, or maintained, contributed to or in any way were responsible for the conditions which existed on the private premises where the trespassing plaintiff was injured. The county exercised

only a limited control, as it had a right to do, and that was to forbid habitation on the premises.

The appellant further argues that under the Local Health Act, supra, 16 P.S. §12012(d), Allegheny County has an absolute and imperative duty to abate this type of nuisance and the breach of this duty renders it liable in tort. This section of the Act reads as follows: "(d) Whenever the health director finds a nuisance detrimental to the public health, he shall cause such nuisance to be abated. Except in an emergency, the health director shall give notice in writing to the owner or his agent, or to the occupier of the premises where the nuisance or cause of the nuisance is located, or to the person known or suspected to have caused the nuisance. The notice shall contain a statement of the conditions constituting the nuisance and an order to abate the nuisance within a specified time. The time specified shall be reasonable. In case the order of abatement is not obeyed, the health director shall abate the nuisance. The cost of abatement shall be recoverable from the owner of the premises where the nuisance or cause of nuisance was located, or from any other person who may have caused the nuisance, in the same manner as debts of like character are now collected by law, or in the manner provided by law for the collection of municipal claims."

In examining the statute we can conclude that the health officer and his subordinates inspect premises to enforce health law, rules and regulations of the Commonwealth, and regulations and rules of the county board of health and abate nuisances detrimental to the public health.

This particular property was ordered vacated because, "This property is condemned as unfit for habitation . . . ." This is not condemnation in the sense used in eminent domain proceedings, rather it is the exercise of judgment of the department of health, delegated

to it by the Commonwealth, that the property is unfit for habitation and cannot be occupied until it is fit for habitation. This it did.

The Allegheny County Department of Health was under no obligation to find that the structure constituted a public nuisance, especially when it is extremely doubtful if such a finding could have been justified. The only danger the house created was one to immediate trespassers and to no one off the premises. The county health department merely found that the health laws and regulations of the Commonwealth were not being complied with.

The Local Health Administration Law merely permitted the city to transfer its functions to the county and withdraw as a public health agency of the Commonwealth. The county through its department of health never was an agent of the city. It is true the city and county were agents but for the Commonwealth and for no one else.

It has long been settled that counties are purely political subdivisions of the Commonwealth. *Commonwealth ex rel. v. Walker*, 305 Pa. 31, 156 Atl. 340 (1931); *Hartness v. Allegheny County*, 349 Pa. 248, 250, 251, 37 A. 2d 18 (1944); as this Court previously stated in the *Hartness* case, at pages 250-251: "The Commonwealth itself is not liable for the torts of its employes in the absence of a statute expressing or implying such liability . . . and counties are largely invested with the same immunity because they are practically nothing more than administrative units which constitute parts of the machinery making up the public system . . .; they are political subdivisions of the State, not municipal corporations."

In the case of *Scibilia v. Philadelphia*, 279 Pa. 549, 124 Atl. 273 (1924), this Court said: "The care of public health is undoubtedly a subject-matter of general concern, and how it shall be accomplished is a public

question. When the legislature leaves its accomplishment to any degree in the hands of the several municipalities, they act as governmental agencies, and not as business corporations, in the performance of the power placed at their disposal or of the duty thus put on them, whichever it may be."

As recently as June 28, 1961 in *Supler v. North Franklin Township School District*, 407 Pa. 657, 660, 182 A. 2d 535 (1962), Chief Justice BELL held: "If it is to be the policy of the law that the Commonwealth or any of its instrumentalities or any political subdivisions are to be subject to liability for the torts committed by their officers or employees while engaged in governmental functions, the change should be made by the Legislature and not by the Courts."

The Allegheny County Department of Health was acting in a governmental capacity and doing what the statutes required it to do, it is not responsible for performance of duties imposed by law on individual property owners.

Order affirmed.

Mr. Justice MUSMANNO dissents.