437 A.2d 447

ASSOCIATES OF PHILIPSBURG, Appellant,

v.

Edsel F. HURWITZ and Alfred B. Hurwitz, t/d/b/a Hurwitz Brothers, a Co-Partnership; Ilene R. Hurwitz, Francine A. Hurwitz, and Irwin H. Hurwitz, Individuals; Bronia Corporation, and McDonald's Corporation.

Superior Court of Pennsylvania.

Argued May 1, 1981.

Filed Nov. 20, 1981.

Harold Gondelman, Pittsburgh, for appellant.

Harvey E. Robins, Pittsburgh, for Hurwitz, appellees.

Frederick J. Francis, Pittsburgh, for Bronia, appellee.

Carl A. Belin, Jr., Clearfield, for McDonald's, appellee.

Before POPOVICH, MONTGOMERY and HOFFMAN, JJ.

MONTGOMERY, Judge:

The Plaintiff-Appellant filed the instant appeal from a final order of the lower court which sustained preliminary objections in the nature of a demurrer and dismissed the Appellant's Petition for Declaratory Judgment. The Appellant instituted this action to resolve rights concerning the use of an entranceway to certain properties owned and/or controlled by the various parties to this case.

The record shows that the Appellant, Associates of Philipsburg, is a general partnership which is the successor in title to certain property in Decatur Township, Clearfield County. At the time of the filing of this action, the Appellant had a shopping plaza on that property. The immediate predecessor in title to the Appellant's property was an entity known as the Trustees of C.I. Mortgage Group (hereinafter referred to as "Trustees"). The Trustees had purchased the property on September 3, 1974 from the Appellee Hurwitz Brothers. The two individuals trading and doing business under that name were the Appellees Edsel F. and Alfred B. Hurwitz, apparently operating as a partnership. A little more than a year after the Trustees purchased the shopping

plaza property from Hurwitz Brothers, both parties executed documents granting each other a right-of-way for entry to each property, from U.S. Route 322, over adjoining corners of land which each controlled along that road. At that time, on November 24, 1975, Hurwitz Brothers still retained property situated contiguous to and generally east of the property then owned by Trustees, and later owned by the Appellant. The pertinent sections of the November, 1975 agreement provided as follows:

1. The Parties hereto hereby mutually agree, one with the other, that each of the respective parties shall have a perpetual right to use the respective entranceways hereinbefore referred to and set out on the drawing hereinabove referred to which is attached to this Agreement. The respective rights to use both of said entranceways shall inure to the benefit of the successors in title and the respective agents, contractors, employees, lessees, business invitees, and business licensees and the customers of any business on the premises owned by the respective Parties; with full right of ingress and egress by pedestrians and vehicles relative to said entranceways.

It is understood and agreed by and between the Parties hereto that as of the date of the execution of this Agreement, the entranceway to the lands of the Parties of the First Part, outlined in green upon the attached map and being designated by the letter "D" is being utilized solely in connection with the operation of the shopping center of the Party of the Second Part on adjacent premises.

. . . .

3. It is covenanted and agreed between the Parties hereto that if and in the event other lands of the Parties of the First Part located to the east and south of the shopping center of the Party of the Second Part are developed, that then and in that event the care and maintenance of the entranceway on the above described premises shall be the equal responsibility of the parties hereto; and they shall be liable severally for damages resulting from their own use of the entranceway.

410

4. This Agreement shall be bind upon and inure to the benefit of the heirs, executors, administrators, successors and assigns of the respective Parties hereto.

In February, 1979, Hurwitz Brothers conveyed a parcel of land comprising .371 acre to the Appellees, Ilene, Francine and Irwin Hurwitz, together with a right-of-way over the entranceway from U.S. Route 322 which had been the subject of the November, 1975 agreement between the Trustees and the Hurwitz Brothers. Subsequently, Ilene, Francine and Irwin Hurwitz leased the tract to Franchise Realty Interstate Corporation. By an easement agreement dated later in February, 1979, the Franchise Realty Interstate Corporation acquired from the Hurwitz Brothers a right-of-way over the entranceway which has been referred to above. Subsequently, Franchise Realty Interstate Corporation assigned all of its right and interest in the property to the McDonald's Corporation, an Appellant herein.

In addition to the transactions described above, the Appellees Ilene, Francine and Irwin Hurwitz were conveyed a tract of land containing .588 acre from another Appellee, the Bronia Corporation. In consideration of that transfer, the Hurwitz Brothers conveyed to Bronia Corporation a right-of-way over the entranceway from Route 322 to adjacent property owned by the Bronia Corporation. The Bronia property was farther to the south and east than the properties belonging to the other parties. The transfer of the right-of-way from Hurwitz Brothers to Bronia Corporation and the conveyance of the small tract of land to Ilene, Francine and Irwin Hurwitz all took place in February, 1979. Later that year, in September, Bronia Corporation conveyed an additional 6.14 acre tract to Ilene, Francine and Irwin Hurwitz, while reserving unto itself in the deed a right-of-way extending from the right-of-way it acquired in the February transaction, through the property then being conveyed to Ilene, Francine and Irwin Hurwitz, to a roadway owned by Bronia Corporation located to the east of the 6.14 acre tract.

In view of the somewhat complex nature of these various transactions, it appears that it would be helpful and appropriate to summarize all of these facts and transactions in simpler form. In summary, Hurwitz Brothers and the Trustees owned neighboring properties and wished to give each other a right-of-way over corners of their adjoining land at an entranceway from U.S. Route 322. Thus, the Hurwitz Brothers conveyed a right-of-way over its entranceway to Route 322 to the Trustees in November, 1975, and simultaneously took in return a right-of-way over the Trustees' contiguous entranceway. Hurwitz Brothers subsequently conveyed rights-of-way over the same entranceways in 1979 to Ilene, Francine and Irwin Hurwitz, the Bronia Corporation, and a predecessor in title of the McDonald's Corporation. All of the latter, as well as the Hurwitz Brothers, were named as defendants in an action instituted by the Appellant, which had succeeded to the rights of the Trustees in the November, 1975 agreement.

The Appellant filed its action in December, 1979 seeking a declaration, from the Court, of its rights under the November, 1975 agreement between the Hurwitz Brothers and the Trustees. Appellant requested injunctive relief against the use of the right-of-way by various Appellees. Each of the Appellees subsequently filed preliminary objections in the nature of demurrers to the Appellant's Petition. Following oral argument and the submission of briefs, the trial court issued a Memorandum and Order sustaining the preliminary objections.

In its original pleading, which was titled "Petition in Declaratory Judgment", the Plaintiff-Appellant recited the various property transactions explained above, and averred that the various Appellees would utilize the common right-of-way over the entranceway in question, in derogation of its own rights in the entranceway. More specifically, the Appellant alleged that the use of the entranceway by the Appellees, ". . . will create an undue and burdensome use of the common right-of-way of Plaintiff's (sic), which usage was to be specifically limited to ingress to the shopping

center presently occupied and managed by the Plaintiff's (sic) and its agents". The Appellant further alleged that various Appellees intended to develop additional areas of their property, which would also cause utilization of the entranceway in a manner inconsistent with the rights of the Appellant. The Appellant also noted in its Petition that the failure of the Appellees to differentiate between rights-of-way granted to each of them and the common right-of-way enjoyed by the Appellant, was inconsistent with its rights as established by the November, 1975 agreement.

On this appeal, the Appellant contends that the Hurwitz Brothers could not extend the use of the easement, or right-of-way over the entranceway to benefit non-contiguous property which they or their successors had either assigned or subsequently acquired. Further, the Appellant argues that a party who is not signatory to the original easement agreement may not be granted a right to utilize the entranceway which was the subject of the original agreement, when such utilization ". . . effects (sic) the free right of passage over and across the said easement by the remaining signatory and creates an unreasonable burden of use on the entranceways." Finally, the Appellant argues that the trial court should have afforded it an opportunity to amend its pleading.

■ The trial court thoroughly reviewed all of the relevant provisions of the agreements in issue in the case, as well as the applicable law. In particular, the court scrutinized the provisions of the critical agreement of November, 1975, between Hurwitz Brothers and the Associates. The Court noted that in Section 1 of that agreement, it was provided that the benefits of the agreement would extend to the successors-in-title, agents, contractors, employees, lessees, business invitees and business licensees of the parties. Section 4 of the agreement extended the benefits to the heirs, executors, administrators, successors and assigns of the parties. Moreover, the following was specifically set forth in Section 3 of the agreement:

"In the event other lands of the parties of the first part (Hurwitz Brothers) located to the east and south of the shopping center of the party of the second part (Trustees of C.I. Mortgage Group) are developed..."

From all of these provisions, it appeared to the lower court that the parties anticipated further development of the property then owned by the Hurwitz Brothers, and also contemplated the extension of all of the benefits of the agreement to successors in title of the parties, as well as others. We not only agree with such findings by the lower court, but believe they are mandated by any fair analysis of the agreement in issue. Thus, it is clear that the Appellee Hurwitz Brothers was not precluded from making subsequent grants of rights of use of the easement which the partnership enjoyed by virtue of the November, 1975 agreement.

We next examine the propriety of the later grants of rights-of-way by the Hurwitz Brothers over their own property situated in the entranceway. It is clear that the owners of land subject to a right-of-way may grant to another or to others a similar right-of-way, provided that the prior grant was not intended to be exclusive. *Puleo v. Bearoff,* 376 Pa. 489, 103 A.2d 759 (1954). It is obvious that the November, 1975 original easement agreement did not contain any provision evidencing an intent that it was to be exclusive. Further, it did not in any way restrict the use by either party. See *Nallin-Jennings Park Co. v. Sterling,* 364 Pa. 611, 73 A.2d 390 (1950). Applicable law establishes that an owner of land who grants a right-of-way over it conveys nothing but the right of passage and reserves all incidents of ownership which have not been granted; the grantor may make use of his land in any way that does not interfere substantially with the previously created easement. See *Edwards v. Julian,* 192 Pa.Superior Ct. 121, 159 A.2d 547 (1960), and cases cited therein. Thus, while the Hurwitz Brothers could lawfully grant later easements in the same property, a question may arise as to whether the grant of

later easements created an excessive burden on the previously granted right-of-way.[1]

■ The lower court recognized all of these legal concepts, but concluded that the Appellant had not averred sufficient facts in its Petition to indicate the nature or the extent of the burden which might be caused to it by the Appellees' use of the critical entranceway. We agree with that assessment by the lower court. Simply put, the Appellant's Petition merely alleged possible *future* burdensome use of the right-of-way by the Appellees. The Appellant's Petition is filled with claims that the Appellees' uses "will create" or "will be burdensome", all consequences envisioned by the Appellee for the *future*. The Appellant did not allege a single incident of harm it had suffered in the past, or was then suffering, as of the date of the filing of its Petition. As such, it is clear that the Appellant, in that pleading, sought the court's declaration of rights based upon *presumed future happenings*. We can find no error by the lower court in denying the Appellant's request for relief, in such circumstances. No right of the Appellant had been violated in the completely lawful assignment of rights-of-way by the Hurwitz Brothers which had been described in the Appellant's Petition. Thus, we find no error whatsoever in the lower court's denial of declaratory relief in this case, or in its grant of the requested demurrer.

■ There remains the sole issue of whether Appellant should have been furnished an opportunity to file an amended pleading. The Appellees point out that the Appellant never took the opportunity to amend its pleading pursuant to Pennsylvania Rule of Civil Procedure 1028(c), which provides, in pertinent part: "A party may file an amended pleading as of course within ten (10) days after service of a copy of preliminary objections". Further, the Appellees

---

1. An overburdening use of an easement may create a problem for one of the other parties enjoying the right-of-way, in which case a court may grant relief to the overburdened party. See for example, *Piper v. Mowris*, 466 Pa. 89, 351 A.2d 635 (1976) and *Taylor v. Heffner*, 359 Pa. 157, 58 A.2d 450 (1948).

point out that in the event that an amendment is not timely made as permitted by Rule 1028(c), a party desiring amendment may still seek amendment thereafter, by motion to the court, pursuant to Pennsylvania Rule of Civil Procedure 1033. That Rule, in part, provides: "A party, either by filed consent of the adverse party or by leave of court, may at any time ... amend his pleading". The Appellees argue that the Appellant has availed itself of neither opportunity, has otherwise foregone seeking amendment in the lower court, and has not raised the issue until this appeal, and therefore has lost any right to amend its pleading.

We would be in agreement with the Appellees' position concerning the subject of amendment were it not for the holding of the Pennsylvania Supreme Court in the case of *Otto v. American Mutual Insurance Co.*, 482 Pa. 202, 393 A.2d 450 (1978). The *Otto* appeal had previously been decided by our Court in a decision reported at 241 Pa.Superior Ct. 423, 361 A.2d 815 (1976). In that case, our Court reviewed a lower court order which granted a defendant's preliminary objections and dismissed a complaint. Like the Appellant here, the plaintiffs argued in *Otto* that the lower court had abused its discretion in dismissing their complaint without allowing them an opportunity to amend. We pointed out that the plaintiffs in *Otto* had made no attempt to amend their complaint in the lower court at any time, either with leave of court or with the consent of the defendant. We further noted that the plaintiffs raised the issue for the first time on appeal. In such circumstances, our Court held that the plaintiffs had waived the right to amend. In its decision on a subsequent appeal in the *Otto* case, the Supreme Court held otherwise and permitted the plaintiffs the opportunity to file an amended pleading. In doing so, it did not meet the issue of whether or not a waiver of the right to amendment had occurred. Rather, the Supreme Court declared that amendments should be permitted where there is any reasonable possibility that a successful amendment can be made so as to state a cause of action. The Court cited several cases, noting that there may be situations where it is

clear that an amendment in order to state a cause of action would be impossible and to grant leave to amend would be futile.[2]

It appears possible to us that the Plaintiff-Appellant in the instant case, especially after the passage of two years in the use of the entranceway in issue by the Appellees, may now be able to allege any *actual* interference or disturbance that has occurred with regard to its own easement rights in the entranceway. Thus, pursuant to the Supreme Court's decision in *Otto*, we must vacate the lower court's order of dismissal, remand this case to the trial court for further proceedings, and afford the Plaintiff an opportunity to offer any amendment to its pleading which it may deem appropriate.

Remanded to the Court of Common Pleas for further proceedings consistent with this Opinion. This Court does not retain jurisdiction.

---

**2.** Rather than to repeat such matters here, we refer the reader to the discussion on this point and opinions cited by the Supreme Court in its decision in the *Otto* case.